APPROPRIATION OF EASEMENTS FOR HIGHWAY PURPOSES OVER THE PROPERTY OF DUEBER REALTY INC. et al, on State Route No. 8, Section 11.17, Stark County, Ohio, In re:
THORMYER, First Assistant Director of Highways, Acting as Director of Highways, Appellee, v. DUEBER REALTY, INC. et, Appellants.

Common Pleas Court, Stark County.

Nos. 99243, 99248.　Decided April 3, 1958.

## OPINION

By GRAHAM, J.

In the within action to appropriate land Dueber Realty, Inc., the Cally-Wyl Co., and Loblaw, Inc., have each filed separate motions to strike the finding and resolution of the Director of Highways from the files.

The first item of the Dueber Realty, Inc., motion asserts the statement in the finding that the Director is unable to purchase the property is false. Cally-Wyl and Loblaw make the same charge.

Dueber Realty asserts that the description of the land set forth in the finding does not meet the requirements of the law. Cally-Wyl and Loblaw make the same charge.

Dueber asserts the plat attached to the finding is vague and insufficient. So do the other two.

Dueber, as do the others, claims the form of notice does not comply with the law.

Dueber and Loblaw claim the finding and notice do not comply with the requirements of the code.

All three parties claim that even if the statutes were fully complied with the statutes are so vague as to constitute a denial of due process of law.

Dueber, alone, claims that there is a defect in parties in that Park Theater Co., a lessee, is not made a party.

The Court, in discussing the claims of the various parties, will refer to the motion of Dueber Realty, Inc., as the claims in its motion are identical to the claims of the other two parties with the exception of Item 2 wherein only Loblaw joins and Item 7 in which neither of the other parties join.

Disposing first of Item 4 of the motion we are of the opinion that the question raised therein is moot. We make no finding as to whether the claim of insufficient notice is a valid one if it had been presented before appeal, but the parties, having appealed, we are of the opinion that they have waived any possible irregularity as to the sufficiency of the notice.

Although it would appear that amended §§5519.01 and .02 R. C., were hastily prepared, even to the extent that two statutes, each labelled §5519.02 R. C. (one the House Bill and the other the Senate version)

appear in the code, we nevertheless find the law not to be so vague, as asserted in Item 6 of the motion, that, if the law was strictly followed, due process of law would be denied.

We deem the complaint set forth in Item 5 of the motion to be repetitious of the matter complained of in Items 2 and 3 of the motion.

In Item 7 of the motion it is claimed that there is a defect in parties in that Park Theatre Co., which, it is asserted, is a lessee, was not named in the Director's Finding and was not served with summons. **Allendorf v. Commissioners, 65 Oh Ap 149,** was a case brought under §1201 GC (now §5519.01 R. C.), and we note the Supreme Court declined to order it certified. In that decision the Court held that a lessee is a necessary party and has a right to appeal and that the law requires that a lessee be served with summons and that a lessee has a right to appeal a finding of the Director. In the body of the opinion the Court said that the term "owner," as employed in §5519.01 R. C., refers to all who have an interest.

If the Park Treatre Co., has a lease the Director should have so stated in his finding and it should have been served with summons. The law places a duty upon the Director to ascertain who the lessees of record are and include them as parties in his finding and if he does not there is a fatal defect in the finding of the Director which cannot be corrected at a preliminary hearing, as the Director suggests in his brief.

However, there is no evidence before this Court which shows the theatre to be a lessee on the lands to be taken. If it would develop through evidence at a trial of this case that the theatre has a lease we are of the opinion that the Court, on motion, would be required to dismiss the proceedings. There being nothing by way of evidence before this Court at this time to show the existence of such a lease we do not believe the Court can consider Item 7 as well taken. If there actually is such a lease it is the Director who should be concerned as to what will happen to this proceeding.

We believe Items 1, 2 and 3 of the motion to be interrelated and that they should be treated as one item. It is claimed that the finding and the plat attached thereto do not disclose to the owner just what land is being appropriated and therefore, since the owner does not know exactly what is being taken, there could not be a negotiation in which it could accept or refuse an offer from the Director and therefore that the Director cannot correctly assert that he "is unable to purchase" the property.

The law requires the Director, in his "finding" to set forth a "definite, accurate and detailed description of the property—." The question therefore arises as to whether the "finding" complies with the law in respect to the description.

At this point we observe that "it is well settled that statutes granting the power of eminent domain must be strictly pursued; and that all the prescribed conditions must be performed,—and when there is doubt as to whether the terms have been followed, the matter must be resolved in favor of the property owner. **(19 O. Jur. 2nd, 417.)**

In the "finding" before us the Director, instead of using a method

of description of the land to be taken by metes and bounds, uses a method of description in which, although the lot number is mentioned, uses a system of station numbers, which although it may be of convenience to the Highway engineers, is not such a form of description as would appear in a deed.

Various texts state that the land description in an action in eminent domain should be as certain as that required by a deed and in 29 C. J. S., 1180 it is stated that it must be so exactly described as to be understood by an ordinary person who has no engineering knowledge.

We have read and reread the descriptions contained in the "finding" and we have compared such descriptions with the plat attached to the "finding," as well as having endeavored to understand and comprehend from the plat alone, just what the Director intends to appropriate and we are unable to come to a determination as to just what part of Out Lot 215 is being taken.

In argument something was said that the stakes placed by the Highway authorities clearly outline the "take" but even if they do, which is disputed, that doesn't comply with the specific requirement of §5519.01 R. C.

Returning to the questions before us, i. e., the description as set forth in the "finding," we find it to begin with the words "From the right and left of centerline." We assume that is intended to mean from the right and left of the center line of the right of way which the Director is taking. But, we query, how is the owner to know where that point is? The "finding" does not fix the center line by metes and bounds from any existing monument or by metes and bounds from a fixed and known point. The description goes on to say that the land being taken begins "at a point on the east line of Dueber Ave. S. W., and also being the west line of said Out Lot 215 a distance of 58.5 feet to the right of Station 58.5 feet to the right of Station 54 plus 41;—." Does that tell us where the point of beginning is? Furthermore how is the owner informed as to where Station 54 plus is located? The so-called description goes on in the same vein as does the second description. This Court is unable to determine from that information where the place of beginning is or the boundaries of the land being appropriated are and we. would not expect the owner to. It is our conclusion that the descriptions recited in the "finding" are not definite as required by the statute.

Although we find no Ohio decisions which are in point as to the subject matter we are considering in relation to the necessity of a definite description, the universal rule seems to be that, particularly where the statute requires an accurate and definite description, "insufficiency in the description of the land which it is sought to take renders the whole proceedings void" (Vol. 6, 3rd Ed., Nichols Eminent Domain, Page 129) unless the defect is cured by amendment, which move, in the case before us, the Director does not seek to take.

The owner seems to be quite serious in its contention that the statement in the "finding" that the Director is unable to purchase is not true. The owner, not being informed as to the exact area to be taken, as required by the statute, it follows that when the Director, in the

"finding" states he has been unable to purchase, makes an incorrect statement. Such statement, according to the authorities, presupposes that negotiations to purchase have been had and, if the owner is not informed as to what the Director wants to buy, there can be no negotiation to buy.

The requirement that the laws of eminent domain "must be strictly pursued" not having been complied with in this instance in so far as an accurate and definite description is concerned and since therefore the matter "must be resolved in favor of the property owner" we find the Director has not legally invoked the jurisdiction of this Court and therefore that the proceedings must be dismissed.

The same conclusion will be the ruling of the Court in Case No. 99248—the Cally-Wyl case.